UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CHAIN ELECTRIC COMPANY                                          Plaintiff

v.                                          Civil Action No. 2:17-cv-212-KS-MTP

OVERLAND CONTRACTING INC.                                       Defendant

## COMPLAINT

### Jury Trial Demanded

Chain Electric Company files this Complaint against Overland Contracting Inc. for breach of contract and negligence as follows:

### I. Parties

1.     Chain Electric Company ("Chain") is a Mississippi corporation located in Hattiesburg, MS.

2.     Overland Contracting Inc. ("Overland") is a North Carolina corporation licensed to do business in Mississippi. Overland may be served with process on its registered agent in Mississippi: CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.

### II. Jurisdiction and Venue

3.     This Court has jurisdiction per 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the parties are citizens of different states.

4.     Venue is proper in this Court per 28 U.S.C. § 1391(b)(2) as the subcontract was executed by Chain in Hattiesburg, Forrest County, Mississippi, work was performed in Hattiesburg, payments per the subcontract were received in Hattiesburg, and Overland breached the subcontract by not remitting payment of all sums owed to Chain in Hattiesburg.

### III. Facts

5.      Overland is a general contractor. Chain is an electrical subcontractor.

6.      Overland contracted with Entergy Mississippi, Inc. for the installation of a new electrical transmission line from Entergy's Franklin substation to Entergy's McComb substation. Overland subcontracted with Chain on May 4, 2017 for Chain to install new transmission pole structures and wires along the 25 miles of the Entergy's transmission lines right of way between the two substations. Ex. "A," Overland-Chain Subcontract at § 01400.

7.      Chain began work on May 15, 2017. Chain's original Construction Erection Schedule substantial completion date was December 14, 2017 but has been extended to January 12, 2018, due to causes beyond the control of and not the responsibility of Chain.

8.      On June 20, 2017, an accident occurred injuring one worker when a concrete pole structure being moved by a crane struck the worker's leg (the "Incident").

9.      Rather than suspend the work for no more than three (3) days as reasonably required and as is the standard and customary practice in the industry Overland unreasonably suspended work until July 10, 2017, claiming the suspension was necessary to create and implement new safety practices and procedures and to allow time to implement new "critical" crane lift planning and reporting, and new rigging procedures different from those previously agreed to among Chain, Overland, Black & Veatch ("B&V" the project engineer), and Entergy as being contract compliant.

10.     This one Incident, which occurred when an employee (since terminated) failed to follow the project safety requirements in place on the date of the Incident, was not a contractually permitted or otherwise valid or justifiable cause for suspending work for an unreasonable period of time or for subsequently imposing excessive, unnecessary, and unsafe crane structure "critical" lift planning and reporting, and different and excessive rigging requirements that would not have

prevented the accident and that unreasonably delayed re-commencement of work for twenty (20) days and then substantially delayed the time and cost of completion thereafter to comply with the extra-contractual "critical" lift planning and reporting, and excessive and extra-contractual rigging requirements.

11.     By directing the new and extra-contractual "critical" lift planning and reporting and excessive rigging requirements, Overland conflates safety with excessive, unnecessary, unsafe, and extra-contractual structure lift planning and reporting and rigging requirements imposed by Overland after a single accident caused by the crane operator (who was immediately terminated) mishandling the crane and not by the absence of any "critical" lift plan or by the type of rigging used.

### A.     Request for Equitable Adjustment #1

12.     As a result of the above, on July 14, 2017, Chain requested from Overland per § 00552.18 of the Subcontract an equitable adjustment to the Subcontract price and schedule in an amount of $254,051.93 due to the delay caused by the Incident ("REA #1). Chain's July 14, 2017 REA #1 is attached as Exhibit "B." The basis for and the calculation of Chain's REA #1 is more fully specified in Exhibit "B."

13.     Overland wrongfully failed to equitably adjust REA #1.

### B.     Request for Equitable Adjustment #2

14.     Once the Incident suspension was ultimately lifted and Chain returned to work, Overland proceeded to commit multiple, additional material breaches of the Subcontract, which as of REA #2 included:

a.     The extra-contractual requirement that Chain provide a structure lift plan for every structure lift and not just for "critical" lifts (over 75% of rated capacity of

the crane; where two (2) cranes are required; or if an irreplaceable load);

b.  The extra-contractual requirement that Chain improve the right-of-way to facilitate transportation of concrete structures "which pushes constructability limits of transporting the poles down the row," improvements which should have been provided by Overland through the work of the right-of-way subcontractor;

c.  The extra-contractual requirement to re-crib structures originally cribbed in accordance with the Subcontract requirements;

d.  The extra-contractual requirement to remove and replace a concrete structure that was defectively manufactured;

e.  Overland's directive to maintain work force and equipment in place during Hurricane Harvey (a Force Majeure event) and then to refusing to pay for such directive as required by § 00552.33 of the Subcontract;

f.  Overland's failure to pay for items submitted under REA #2 that Overland has accepted;

g.  Overly strict inspection and interference with Chain's means and methods of construction by refusing to allow use of Chain's 77 ton crane that was budgeted in Chain's Subcontract price and that was suitable for use under the terms of the Subcontract; and

h.  Nonpayment in violation of § 00551.4 and § 00552.4 of the Subcontract.

15.   On October 11, 2017, Chain requested from Overland per § 00552.18 of the Subcontract an adjustment to the Subcontract price and schedule for the reasons stated in paragraph 14 herein ("REA #2). Chain's October 11, 2017 REA #2 is attached as Exhibit "C." The basis for

Chain's REA #2 claims are more fully specified above and in Exhibit "C." Chain currently estimates the damages claimed in REA #2 to be in excess of $2,055,448.00.

16.     Overland has wrongfully failed to equitably adjust REA #2.

**C.      Request for Equitable Adjustment #3**

17.     After Chain submitted its October 11th REA #2, Overland committed further multiple, additional material breaches of the Subcontract, which include:

> a.   Delaying in issuance of HLH clearance and one-shots to allow Air 2 Helicopter to fly;
>
> b.   Grounding Air2 Helicopter for two (2) days due to a near miss on another project; and,
>
> c.   Directing scope deduction and redirection of Chain's existing work plan to a different line segment.

18.     On December 12, 2017 but transmitted on December 13, 2017, Chain requested from Overland per § 00552.18 of the Subcontract an adjustment to the Subcontract price and schedule for the reasons stated in paragraph 17 herein ("REA #3). Chain's December 12, 2017 REA #3 is attached as Exhibit "D." The basis for Chain's REA #3 claims are more fully specified above and in Exhibit "D." Chain currently estimates the damages claimed in REA #3 to be in excess of $687,116.00.

19.     Since the project is ongoing, and Overland continues to disrupt and interfere with Chain's performance, Chain reserves the right to update and more accurately calculate the additional time and cost to which it is finally entitled and to assert and seek recovery for damages for all other breaches by Overland that may occur through completion of the project.

**D.    Overland's deletions of Chain's Subcontract work**

20.    Rather than extending Chain's contract time due to the above delays, extra-work, and resulting inefficiencies caused by Overland, Overland has deleted portions of Chain's Subcontract work.   For its own benefit, Overland has "descoped" significant portions of Chain's Subcontract work scope and has, or is in the process of, subcontracting that descoped work to other subcontractors.

21.    As a direct and proximate result of Overland's descoping, Chain will incur damages for unabsorbed overhead and lost profit Chain would have earned had it been allowed to perform all of the descoped work during an extension of the Subcontract time to which Chain is entitled for all of the reasons stated above.

22.    Each and every one of the above referenced extra-contractual Subcontract requirements and Overland's acts and omissions in violation of the Subcontract provisions constitute material breaches of the Subcontract, which proximately caused the damages Chain claims herein and which were reasonably and necessarily incurred as the result of Overland's material breaches.

**Count I – Breach of Contract**
**Equitable Adjustment of the Subcontract**

23.    Chain re-alleges the allegations of paragraphs 1-22.

24.    As set forth above, Chain's performance of the Subcontract was, for unreasonable periods of time, suspended, delayed, and interrupted by Overland's interference with Chain's performance of its work through Overland's overly strict Subcontract compliance requirements, Overland's direction of Chain's means and methods of construction, and Overland's demand for extra contractual performance.

25.    Accordingly, Overland's breaches of Subcontract entitle Chain to the following

relief per the terms of the Subcontract:

    a.  Payments as required by § 00551.4 and § 00552.4;

    b.  Schedule extensions and reasonable delay costs incurred by Chain as the proximate result of all delays caused by Force Majeure events per § 00552.33 or by Overland, B&V, or Entergy per § 00552.5.1;

    c.  The additional costs to accelerate the work for Force Majeure events per § 00552.33 or caused by acts or omissions of Overland, B&V, or Entergy per § 00552.5.2;

    d.  A Subcontract Revision (equitable adjustment) in time and price for conditions encountered at the site differing from those indicated in the Subcontract or that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character per § 0552.5.4;

    e.  An equitable adjustment in Subcontract time and price for delay resulting from the acts or omissions of Overland, B&V, or Entergy, including their failure to secure and adequately improve any necessary rights-of-way or to provide adequate access to the Project Site per § 00552.5.5;

    f.  An equitable adjustment in Subcontract time and price for the overly strict inspections by Overland, B&V, or Entergy which is beyond the requirements of the Subcontract, in violation of § 00552.11;

    g.  Compensation for all changes directed by Overland during the project per § 00552.19 that have not been reduced to writing and executed by Overland and Chain;

    h.  An equitable adjustment in Subcontract time and price for Overland's

suspensions of work per § 00552.22;

i.  An equitable adjustment in Subcontract time and price for the Hurricane Harvey Force Majeure event per § 00552.33 for the direction to maintain its workforce and equipment in place per § 00552.33;

j.  An equitable adjustment in Subcontract time and price for extra-contractual safety requirements far beyond those set forth § 00554.3 and § 00555;

k.  Compensation for unabsorbed overhead and lost profit that Chain would have earned had it been allowed to perform all of the descoped work through an extension of the Subcontract time; and,

l.  Attorney's fees per § 0552.29.4.

26.   All of Chain's claims presented herein have previously been submitted with the required written notice (except where Overland had actual notice of the claim at the time the facts surrounding the claim became known to Chain) and with appropriate supporting documentation, to the extent known to Chain, which claims entitle Chain to an equitable adjustment in Subcontract time and price per § 00552.18.

27.   Overland has failed and refused to equitably adjust REA #1, REA #2, and REA #3.

28.   According to the Subcontract, Chain is entitled to an equitable adjustment, increasing the contract price in excess of $2,742,564.00, extending the contract time beyond the original Construction Erection Schedule substantial completion date of December 14, 2017, and compensation for unabsorbed overhead and lost profit Chain would have earned had it been allowed to perform all of the descoped work through an extension of the Subcontract time.

29.   Overland's multiple, material breaches of contract as described above have directly and proximately caused Chain damages in an amount in excess of $2,742,564.00 with a total

amount to be proven at trial.

WHEREFORE, Chain prays for the relief set forth below.

### Count II – Breach of Duty of Good Faith and Fair Dealing

30.     Chain re-alleges the allegations of paragraphs 1-29.

31.     Overland owes Chain a duty of good faith and fair dealing in all matters connected with the Subcontract.

32.     Overland impliedly agreed in the Subcontract not to delay, hinder, or interfere with Chain's performance and also impliedly agreed to cooperate in good faith with Chain's performance of the work.

33.     Overland's interference with Chain's performance of its work and refusal to grant REA #1, REA #2, and REA #3 is a bad faith breach of the Subcontract violating the standards of decency, fairness, and reasonableness, and as such, constitutes a breach of the duty of good faith and fair dealing.

34.     As a direct and proximate result of Overland's breach of the duty of good faith and fair dealing, Chain has suffered damages in an amount to be proven at trial.

WHEREFORE, Chain prays for the relief set forth below.

### Count III – Negligence

35.     Chain re-alleges the allegations of paragraphs 1-34.

36.     Overland owed Chain a duty not to delay, hinder, or interfere with Chain's performance of its work.

37.     Overland knew that delaying, hindering, or interfering with Chain's performance would proximately result in damages to Chain.

38.     Overland breached its duty by negligently delaying, hindering, or interfering with

Chain's performance, and, as the proximate and foreseeable result of Overland's negligence, Chain has suffered damages, including direct and consequential damages, in an amount to be proven at trial.

WHEREFORE, Chain prays for the relief set forth below.

### Count IV – Prompt Payment Penalties

39.     Chain re-alleges the allegations of paragraphs 1-38.

40.     Section 87-7-5 of the Mississippi Code requires that when a contractor receives any payment from the owner under a construction contract, the contractor shall, upon receipt of that payment, pay each subcontractor in proportion to the percentage of work completed by each subcontractor. If the contractor without reasonable cause fails to pay his subcontractors within fifteen (15) days after receipt of payment, the contractor shall pay his subcontractors, in addition to the payment due them, a penalty in the amount of one-half of one percent per day of the delinquency. The total penalty shall not exceed fifteen (15%) of the outstanding balance due.

41.     Chain is entitled to prompt payment penalties per *Miss. Code Ann.* § 87-7-5 for any and all payments received by Overland that have been withheld from Chain in violation of *Miss. Code Ann.* § 87-7-5, if any.

WHEREFORE, Chain prays for the relief set forth below.

WHEREFORE, PREMISES CONSIDERED, Chain Electric Company demands judgment of and from Defendant, Overland Contracting Inc. as follows:

1.  Actual damages in the principal amount in excess of $2,742,564.00, the exact amount to be shown at the trial of this cause, together with interest thereon at the maximum amount allowed by law from the date due until paid;

2.  An extension of time beyond the original Construction Erection Schedule substantial

completion date of December 14, 2017, such date to be proven at the trial of this cause;

3. Reasonable attorney's fees incurred herein per § 0552.29.4 of the Subcontract, the exact amount of which to be shown at the trial of this cause;

4. Prompt payment penalties per *Miss. Code Ann.* § 87-7-5;

5. All costs incurred herein; and,

6. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

CHAIN ELECTRIC COMPANY

By its attorneys,

MOCKBEE HALL & DRAKE, P.A.

By: /s/ David W. Mockbee
DAVID W. MOCKBEE, MSB #3396

MOCKBEE HALL & DRAKE, P.A.
Capital Towers Building, Suite 1820
125 South Congress Street
Jackson, Mississippi 39201
Telephone:   (601) 353-0035
Facsimile:   (601) 353-0045
dmockbee@mhdlaw.com